## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DIANE COLUZZI, MICHAEL MARCHELOS, and GARY LIEB individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant. | Case No. 1:24-cv-6042<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Diane Coluzzi, Michael Marchelos, and Gary Lieb ("Plaintiffs") bring this Class and Collective Action Complaint against Defendant Bank of America, N.A. ("Defendant" or "Bank of America") on behalf of themselves and all others similarly situated, stating and alleging the following:

## NATURE OF THE ACTION

1.      In response to the COVID-19 outbreak, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), which allocated significant funding for loans to small businesses affected by the pandemic and resulting economic downturn. This loan measure—dubbed the Paycheck Protection Program (PPP)—was to be administered by the federal Small Business Administration in conjunction with the Department of the Treasury.

2.      But the federal government lacked the capacity to administer this program on its own. Instead, it turned to large financial institutions like Bank of America, which had the existing infrastructure to process large numbers of loans.

3.      For companies like Bank of America, the task of processing and disbursing loans through the PPP program promised to be a highly profitable one. Financial institutions were paid

a percentage of each loan they administered on a sliding scale; 5% of each loan up to $350,000 and 1% of each loan over $2 million.

4.     But for the loan officers and consultants required to work on the program, prospects were much less rosy. Most of these workers were paid on an hourly basis and made much of their income through commissions on loans they originated and processed. But PPP loans promised no such commissions, and instead would take the workers' time away from more profitable, commissioned work.

5.     To induce workers to remain with Bank of America and to work on the company's lucrative PPP loan program and to replace otherwise profitable commissions for loan origination, Bank of America promised various incentive payments to employees who agreed to work on the PPP loan program (referred to collectively herein as "PPP incentive pay").

6.     For instance, it promised employees working on the PPP loan program that they would be paid at a rate based on their average total compensation, including all commission earnings, for the three months preceding the start of the COVID-19 pandemic. It also guaranteed daily overtime for all work over eight hours in a day at a rate of two times the employees' regular base hourly rate. And it promised employees that they would be paid double or triple their regular base hourly rates for all hours worked on certain days, usually on weekends.

7.     But Bank of America failed to make good on these promises. Indeed, Plaintiffs' pay records bear no indication that they were ever paid these incentives, despite the fact that they worked long hours on the PPP loan program.

8.     In addition, some employees who were classified as exempt and not entitled to overtime pay were assigned to work on the PPP loan program, which consisted of non-exempt, ministerial work relating to the processing of loan applications. Those employees were

2

misclassified for the duration of their work on the PPP loan program, and as a result, were not paid any overtime premiums for their substantial overtime work.

9.    As a result of these practices, employees who stepped up to the critical work of administering the PPP loan program were short-changed the wages they were owed. As explained below, many Bank of America employees, including Plaintiffs, worked long hours and significant overtime throughout the pandemic to ensure the nation's small businesses had the resources they needed to stay afloat. This suit seeks to recover for them the wages and penalties they are owed under the law.

## **PARTIES, JURISDICTION, AND VENUE**

10.    Plaintiff Diane Coluzzi is a citizen of New York who at all times relevant to this suit worked for Bank of America within the state of New York. She was an hourly, non-exempt senior financial lending officer who worked for Bank of America in the state of New York from 1998 through May 2021, and was assigned to work on the PPP loan program on or about April 2020.

11.    Plaintiff Michael Marchelos is a citizen of New York who at all times relevant to this suit worked for Bank of America within the state of New York. He was an hourly, non-exempt mortgage loan officer who worked for Bank of America in the state of New York from September 2019 through May 2021, and was assigned to work on the PPP loan program on or about April 2020.

12.    Plaintiff Gary Lieb is a citizen of New York who at all times relevant to this suit worked for Bank of America within the state of New York. He was an hourly, non-exempt credit solutions advisor who worked for Bank of America in the state of New York from April 2018 through July 2021 and was assigned to work on the PPP loan program on or about April 2020.

13.    Defendant Bank of America, N.A. is a national association having its principal place of business in North Carolina.

14.    This Court has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000.00, exclusive of interest, attorneys' fees, and costs; and (3) Bank of America and at least one class member are citizens of different states.

15.    This Court also has subject matter jurisdiction over the Fair Labor Standards Act claims of Plaintiffs and all others similarly situated pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and over all related state law claims pursuant to 28 U.S.C. § 1367.

16.    This Court has personal jurisdiction over Bank of America because it is authorized to do business and regularly conducts business in New York, and the claims of Plaintiffs and the Class they seek to represent arose within the state of New York.

17.    Venue is proper in this district under 28 U.S.C. § 1391(b) because Bank of America resides within this district, and a substantial part of the events giving rise to the claims at issue occurred in this district, as one or more Plaintiffs and putative class members performed work subject to this suit within the boundaries of this district.

## FACTS RELEVANT TO ALL CLAIMS

18.    Bank of America began administering and processing PPP loans on or about April 1, 2020, whereupon the company started offering loan officers, loan consultants, and others PPP incentive pay for work on the program. Upon information and belief, this program and incentive pay continued until approximately May 2021.

19.    One form of PPP incentive pay offered to employees was for daily overtime at double their base hourly rates of pay. Specifically, on or about April 27, 2020, Bank of America sent an email to employees working on the PPP loan program promising that they would be "eligible to receive special compensation payments starting today until further notice." It went on to state that "[h]ourly employees are eligible and approved for **enhanced overtime pay equal to two times your hourly base pay** for all time worked **over your regularly scheduled eight hours per day**" (emphasis in original).

20.    But Bank of America did not fulfill this agreement, despite the fact that its employees worked an enormous number of hours in excess of eight in a day on the PPP loan program.

21.    For instance, during the two-week pay period from May 11, 2020 through May 24, 2020, Plaintiff Coluzzi worked 74.733 hours in excess of forty in a workweek, for which she was paid overtime at time-and-a-half her base rate. She thus worked a significant number of daily overtime hours in excess of eight in a day, for which she was not paid two times her hourly base pay rate.

22.    Likewise, during the two-week pay period from June 8, 2020 through June 21, 2020, Plaintiff Marchelos worked 68.95 hours in excess of forty in a workweek, for which he was paid overtime at time-and-a-half his base rate. He thus worked a significant number of daily overtime hours in excess of eight in a day, for which he was not paid two times his hourly base pay rate.

23.    Another PPP incentive pay offer was for a higher hourly rate of pay for *all* hours worked—not just overtime—on certain, specified dates, usually on weekends. For example, on May 7, 2020, Bank of America's Small Business Credit Paycheck Protection Program Taskforce

sent an email to employees promising "special compensation" for work over the weekend of May 9-11, 2020, such that [h]ourly employees will be paid <u>three</u> times your hourly base pay rate" (emphasis in original).

24.     But again, Bank of America reneged on its promise and failed to pay its employees at the agreed rate. Plaintiffs and other similarly situated employees regularly performed work on weekends and other days for which this special compensation was in effect but received no additional pay for it.

25.     For instance, Plaintiff Coluzzi's paystub for the period of April 27 to May 10, 2020 shows her being paid only at her regular earnings rate of $20 per hour (along with a higher rate for overtime), but bears no evidence of her having been paid at three times her base rate, or $60 per hour. Similarly, Plaintiff Marchelos' paystub for the period of April 27 to May 10, 2020 shows him being paid only at his regular earnings rate of $20 per hour (along with a higher rate for overtime), but bears no evidence of him having been paid at three times his base rate, or $60 per hour. And likewise, Plaintiff Lieb's paystub for the period of April 27 to May 10, 2020 shows him being paid only at his regular earnings rate of $20 per hour (along with a higher rate for overtime), but bears no evidence of him having been paid at three times his base rate, or $60 per hour.

26.     Another form of incentive pay was Bank of America's policy of "enhanced overtime" for all "U.S. contact center and operation center employees" during the COVID-19 pandemic. Under this policy, eligible employees would "receive a special enhanced overtime payment of 0.5 times [their] hourly base pay rate", which "equates to 2 times the hourly base pay rate for any overtime worked above 40 hours a week."

27.     Upon information and belief, unlike the other forms of incentive payments discussed herein, the enhanced overtime incentive was available to employees regardless of whether they worked on the PPP loan program.

28.     Despite being promised, this enhanced overtime was not actually paid to employees. Instead, they were paid overtime at only the time-and-a-half rate required by statute. Indeed, throughout the COVID-19 pandemic period, Bank of America employees' paystubs continued to list overtime hours as "Time-and-Half OT" and pay them as such. For instance, Plaintiff Coluzzi's paystub for the pay period of May 11 to May 24, 2020 lists her having worked 6.817 overtime hours. For this overtime work, she was paid at a rate of $30 per hour, or 1.5 times her base rate of $20 per hour, resulting in overtime earnings of $204.53. Had Bank of America fulfilled its promise, it would have paid these hours at $40 per hour, resulting in Plaintiff Coluzzi earing $272.68 for the work in question.

29.     An additional manner of PPP incentive pay consisted of an assurance from Bank of America that workers on the PPP loan program would receive as their base pay the "better of" pay based on a compensation grid, or the average total compensation, including all commission earnings, for the months of December 2019, January 2020, and February 2020.

30.     But this incentive pay was not reflected in any increased base hourly rate for Plaintiffs and other similarly situated employees. Instead, upon information and belief, it was added as a lump sum and paid in arrears for each particular pay period, listed on paystubs as a miscellaneous nondiscretionary award.

31.     However, this incentive award was not paid as promised. Had it been, the amount of the award—which again, was to be the higher of a compensation grid amount or an average of

the employee's total earnings for the three months preceding the pandemic—should have remained constant, unchanged, and predictable throughout the duration of the program.

32.    This simply did not occur. Instead, the amount of the award varied substantially from workweek to workweek. For example, Plaintiff Marchelos received an award of $1,236.15 for the week of April 13-19, 2020, but this amount was reduced to $777.06 for the week of April 20-26, 2020, and reduced further to $598.00 for the following week of April 27 to May 3, 2020. Again, these fluctuations and reductions are irreconcilable with Bank of America's assurances at the outset of the PPP loan program.

33.    Additionally, other similarly situated employees were classified as exempt and not paid overtime in conjunction with their regular work for Bank of America. These classifications became erroneous upon their assignment to work on the PPP loan program, which consisted chiefly of loan processing and other non-exempt job duties. As a result of this misclassification, said employees were not paid any overtime premiums for their work on the PPP loan program.

34.    As a result of these policies and practices, Plaintiffs and all similarly situated employees were paid less than the amount to which they were entitled by law.

35.    Additionally, and as a consequence of this violation, Plaintiffs and other similarly situated employees were also not provided accurate wage statements and notices as required by New York's Wage Theft Prevention Act. In particular, because they were paid overtime in arrears and paid miscellaneous nondiscretionary awards in amounts that fluctuated significantly for no known reason, Plaintiff and other similarly situated employees were left confused, vexed, and unable to understand their rates or bases of pay during the pendency of the PPP loan program.

## **ALLEGATIONS APPLICABLE TO THE FLSA**

36.    At all times material herein, Plaintiffs and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

37.    The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

38.    Bank of America is subject to the minimum wage and overtime pay requirements of the FLSA because they operate an enterprise engaged in interstate commerce and its employees are engaged in commerce.

39.    During all relevant times to this action, Bank of America acted as the "employer" of Plaintiffs and all similarly situated employees within the meaning of the FLSA.  29 U.S.C. § 203(d).

40.    During all times relevant to this action, Plaintiffs and all similarly situated employees were Bank of America's "employees" within the meaning of the FLSA.  29 U.S.C. § 203(e).

41.    Pursuant to the FLSA, employees are entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  29 U.S.C. § 207(a). These overtime payments are generally required to be made by the next regular pay period. 29 C.F.R. § 778.106.

42.    Although the FLSA contains some exceptions (or exemptions) from the overtime requirements, none of those exceptions (or exemptions) applies here.

43.    Plaintiffs and all similarly situated employees are victims of uniform and unlawful compensation policies.

44.    Plaintiffs and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three (3) years preceding the filing of the Class and Collective Action Complaint, plus periods of equitable tolling, because Bank of America acted willfully and knew, or showed reckless disregard of whether its conduct was prohibited by law. Bank of America's policies alleged herein constituted a willful violation of law in that, *inter alia*:

- At the start of the PPP loan program, Bank of America appears to have initially paid its employees at a higher rate. However, on a conference call with employees working on the PPP loan program in April 2020, Bank of America claimed that the rates of pay were "inflated", and stated that starting April 27, 2020, they would be reduced;

- Bank of America attempted to conceal the true nature of its pay practices relating to employees working on the PPP loan program, including by disseminating opaque, confusing, and misleading communications and policies concerning how its employees' pay was calculated, by failing to explain to employees how their pay was calculated, and by providing paystubs and records that failed to convey how the amount paid was calculated;

- To further this deception, Bank of America took pains to ensure that its pay practices for employees working on the PPP loan program were not put in writing. For instance, during the aforementioned conference call discussing compensation for the PPP loan program, Bank of America management told

employees "we're not circulating this in writing, so do listen carefully." On other occasions, employees were explicitly instructed not to forward emails regarding compensation for work on the PPP loan program to anyone outside the Bank of America organization;

- As a result of Bank of America's failure to pay its employees the PPP incentive pay it promised, it also failed to include these payments in the employees' regular rates when calculating overtime, without having a good faith basis for failing to do so; and

- Bank of America also willfully violated the law by failing to pay overtime by the next regular pay day. In its normal course, Bank of America is permitted to pay overtime in arrears, because that is necessary to factor earned monthly commissions into the employee's regular rate. But during the PPP loan program, employees did not earn monthly commissions to be used to calculate their regular rates. Bank of America thus did not have a good faith basis for paying overtime in arrears.

45.    Bank of America has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Alternatively, should the Court find Bank of America acted in good faith or with reasonable grounds in failing to pay overtime compensation, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

46.     As a result of these violations, Bank of America is liable for liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

**ALLEGATIONS APPLICABLE TO THE
NEW YORK STATE LAW CLAIMS**

47.     At all times relevant, Plaintiffs and all similarly situated employees have been entitled to the rights, protections, and benefits provided under the New York Labor Law and the New York Wage Theft Prevention Act.

48.     During all times relevant to this action, Bank of America was the "employer" of Plaintiffs and the class members within the meaning of New York law, or otherwise subject to its statutory provisions.  N.Y. Lab. Law § 190(3).

49.     During all times relevant to this action, Plaintiffs and the class members were Bank of America's "employees" within the meaning of New York law. N.Y. Lab. Law § 190(2).

50.     Plaintiffs and the class members are victims of uniform (and uniformly deficient) compensation and notice policies in violation of New York law.

51.     Plaintiffs and the Class are entitled to recover all damages, costs, attorney fees, statutory penalties, liquidated damages, and other recoverable items provided pursuant to the New York Labor Law and Wage Theft Prevention Act.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

52.      Plaintiffs brings Count I, the FLSA claim arising out of Bank of America's overtime violations, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following collective action class:

> All current and former Bank of America employees whose overtime compensation was not paid to them by the next regular pay day and/or who did not have the PPP incentive payments promised to them included in the regular rate used to calculated their overtime earnings, or who were not paid overtime at all, in workweeks for which they worked more than forty (40) hours within the state of New York at any

time from three (3) years prior to the filing of the initial Class and Collective Action
Complaint to the present, plus any applicable tolling period(s).

Plaintiffs' FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C.

§ 216(b).

53.     Plaintiffs, individually and on behalf of all others similarly situated, seek relief on

a collective basis challenging Bank of America's above-described FLSA violations.  The number

and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined

from Bank of America's records, and potential opt-in plaintiffs may easily and quickly be notified

of the pendency of this action.

54.     Plaintiffs bring Count II (Unpaid and Untimely Paid Overtime in Violation of the

New York Labor Law) pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2),

23(b)(3) and/or 23(c)(4). Plaintiffs bring this action on behalf of themselves and all others similarly

situated, and seeks to represent the following class:

> All current and former Bank of America employees whose overtime compensation
> was not paid to them by the next regular pay day and/or who did not have the PPP
> incentive payments promised to them included in the regular rate used to calculated
> their overtime earnings, or who were not paid overtime at all, in workweeks for
> which they worked more than forty (40) hours within the state of New York at any
> time from six (6) years prior to the filing of the initial Class and Collective Action
> Complaint to the present, plus any applicable tolling period(s).

Excluded from the Classes are Bank of America, any entity in which Bank of America has a

controlling interest, any of the officers or directors of Bank of America, the legal representatives,

heirs, successors, and assigns of Bank of America, anyone employed with Plaintiffs' counsel's

firms, and any Judge to whom this case is assigned, and his or her immediate family.

55.     Plaintiffs bring Count III (Unpaid Wages Owed by Agreement in Violation of the

New York Labor Law's Wage Payment Provisions) and Count IV (Breach of Contract) pursuant

to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4). Plaintiffs

bring this action on behalf of themselves and all others similarly situated, and seeks to represent the following class:

> All current and former Bank of America employees who were not paid any PPP incentive payment, however characterized, that was promised to them by Bank of America within the state of New York at any time from six (6) years prior to the filing of the initial Class and Collective Action Complaint to the present, plus any applicable tolling period(s).

Excluded from the Classes are Bank of America, any entity in which Bank of America has a controlling interest, any of the officers or directors of Bank of America, the legal representatives, heirs, successors, and assigns of Bank of America, anyone employed with Plaintiffs' counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

56.    Plaintiffs bring Count V (Failure to Provide Wage Statements in Violation of the New York Wage Theft Prevention Act) and Count VI (Failure to Provide Wage Notices in Violation of the New York Wage Theft Prevention Act) pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4). Plaintiffs bring this action on behalf of themselves and all others similarly situated, and seeks to represent the following class:

> All current and former Bank of America employees who were not paid any PPP incentive payment, however characterized, that was promised to them by Bank of America, whose overtime compensation was not paid to them by the next regular pay day and/or who did not have the PPP incentive payments promised to them included in the regular rate used to calculated their overtime earnings, or who were not paid overtime at all, in workweeks for which they worked more than forty (40) hours within the state of New York at any time from six (6) years prior to the filing of the initial Class and Collective Action Complaint to the present, plus any applicable tolling period(s).

Excluded from the Classes are Bank of America, any entity in which Bank of America has a controlling interest, any of the officers or directors of Bank of America, the legal representatives, heirs, successors, and assigns of Bank of America, anyone employed with Plaintiffs' counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

57.    Plaintiffs' New York state law claims (Counts II-VI) described in detail below, satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

58.    The class numbers in the hundreds, if not thousands, of persons. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this action through regular mail, e-mail, and/or posting of an approved notice.

59.    There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members. The questions of law and fact common to the classes arising from Bank of America's actions include, without limitation, the following:

- Whether Bank of America violated the New York Labor Law when it failed to pay PPP incentive payments it promised to employees;

- Whether Bank of America violated its contractual agreements when it failed to pay PPP incentive payments it promised to employees;

- Whether Bank of America violated the New York Labor Law when it failed to include the PPP incentive payments it promised to employees in said employees' regular rates when calculating overtime;

- Whether Bank of America violated the New York Labor Law when it paid overtime in arrears;

- Whether Bank of America violated the New York Labor Law when it failed to pay overtime to employees assigned to work on the PPP loan program who were previously classified as exempt;

- Whether Bank of America's wage notice forms accurately listed all required information, including but not limited to the employee's regular hourly rate and overtime rate of pay;

- Whether Bank of America provided wage statements accurately listing all required information, including but not limited to the employee's regular hourly rate and overtime rate of pay; and

- Whether Bank of America's conduct and practices were willful and lacking a good faith legal basis.

60.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

61.    Plaintiffs' claims are typical of those of the respective classes in that class members have been employed in the same or similar positions as Plaintiffs and were subject to the same or similar unlawful pay practices as Plaintiffs.

62.    A class action is the superior method for the fair and efficient adjudication of Plaintiffs' claims.  Bank of America has acted or refused to act on grounds generally applicable to the class.  The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

63.    Plaintiffs are adequate representatives because they are members of the classes they seek to represent, and their interests do not conflict with the interests of the members of those classes.  The interests of the members of the classes will be fairly and adequately protected by

Plaintiffs and their undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation.

64.    Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy.  It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in consistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

### <u>COUNT I - FLSA (Unpaid and Untimely Paid Overtime Wages)</u><br>Arising Out of Bank of America's Overtime Payment Policies

66.    Plaintiffs re-allege the allegations set forth above.

67.    Bank of America violated the FLSA by failing to pay Plaintiffs and all other similarly situated employees in a timely manner for all overtime hours worked at one and one-half times the regular rate for all hours worked in excess of forty hours in a workweek.

68.    Generally, overtime payments are required to be made by the next regular pay period. 29 C.F.R. § 778.106.

69.    The FLSA permits an exception to this rule when "the correct amount of overtime compensation cannot be determined until some time after the regular pay period", such as when a monthly commission must be factored into an employee's regular rate. *Id*. But in this case, employees working on the PPP loan program did not earn commissions, and as such, there was no legal justification for Bank of America to fail to pay them all overtime owed to them by the next regular pay day.

70.    Plaintiffs and other similarly situated employees were paid overtime in arrears for their miscellaneous nondiscretionary award earnings at a time later than the next regular pay day.

As such, Bank of America violated the FLSA's overtime provisions by failing to pay all overtime due in a timely manner.

71.    Additionally, the FLSA requires that employees are paid one and one-half times their regular rate of pay, and Bank of America agreed by contract to enhance that rate an additional 0.5 times.  By law, the regular rate includes not only the amounts actually paid to an employee in a particular workweek, but also any additional amounts owed to him by agreement.

72.    Bank of America, as alleged herein, failed to compensate Plaintiffs and other similarly situated employees for the various forms of PPP incentive pay it agreed to pay them. Consequently, it also failed to include those payments in the employees' regular rates when calculating and paying overtime.

73.    As a result, Plaintiffs and other similarly situated employees' overtime pay was not based on the proper regular rate of pay under the FLSA, but instead calculated from a lower amount. They also were not paid their overtime at the enhanced rate they were promised by Bank of America.

74.    Additionally, other employees were not paid any overtime at all for their work on the PPP loan program, particularly those who were classified as exempt prior to being assigned to work on the program. Those classifications became erroneous when they began working on the PPP loan program, which consisted chiefly of loan processing and other non-exempt duties.

75.    Due to these practices, Plaintiffs and other similarly situated employees were paid less than required under the FLSA for each overtime hour worked.

76.    Bank of America has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated

damages in an amount equal to the amount of unpaid and/or untimely paid overtime pay pursuant to 29 U.S.C. § 216(b). Alternatively, should the Court find Bank of America did act with good faith and reasonable grounds in failing to pay overtime pay, Plaintiffs and other similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

WHEREFORE, on Count I of this First Amended Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

a.   Issue notice to all similarly situated employees of Bank of America informing them of their right to file consents to join the FLSA portion of this action;

b.   Award Plaintiffs and all similarly situated employees damages for unpaid and untimely paid overtime wages under 29 U.S.C. § 216(b);

c.   Award Plaintiffs and all similarly situated employees liquidated damages for all unpaid and untimely paid overtime wages under 29 U.S.C. § 216(b);

d.   Award Plaintiffs and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e.   Award Plaintiffs and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

f.   Award Plaintiffs and all similarly situated employees such other relief as the Court deems fair and equitable.

### COUNT II – New York Labor Law (Unpaid and Untimely Paid Overtime Wages) Arising Out of Bank of America's Overtime Payment Policies

74.   Plaintiffs re-allege the allegations set forth above.

75.     Bank of America violated the New York Labor Law by failing to pay Plaintiffs and all other similarly situated employees in a timely manner for all overtime hours worked at one and one-half times the regular rate for all hours worked in excess of forty hours in a workweek.

76.     Generally, overtime payments are required to be made by the next regular pay period, and "not less frequently than semi-monthly, on regular pay days designated in advance by the employer. N.Y. Lab. Law § 191.

77.     The New York Labor Law arguably permits an exception to this rule, in accordance with the FLSA, when the correct amount of overtime compensation cannot be determined until some time after the regular pay period, such as when a monthly commission must be factored into an employee's regular rate. But in this case, employees working on the PPP loan program did not earn commissions, and as such, there was no legal justification for Bank of America to fail to pay them all overtime owed to them by the next regular pay day.

78.     Plaintiffs and other similarly situated employees were paid overtime in arrears for their miscellaneous nondiscretionary award earnings at a time later than the next regular pay day. As such, Bank of America violated the New York Labor Law's overtime provisions by failing to pay all overtime due in a timely manner.

79.     Additionally, the New York Labor Law requires that employees are paid one and one-half times their regular rate of pay, and Bank of America agreed by contract to enhance that rate an additional 0.5 times.  By law, the regular rate includes not only the amounts actually paid to an employee in a particular workweek, but also any additional amounts owed to him by agreement.

80.     Bank of America, as alleged herein, failed to compensate Plaintiffs and other similarly situated employees for the various forms of PPP incentive pay it agreed to pay them.

Consequently, it also failed to include those payments in the employees' regular rates when calculating and paying overtime.

81.     As a result, Plaintiffs and other similarly situated employees' overtime pay was not based on the proper regular rate of pay under the New York Labor Law, but instead calculated from a lower amount. They also were not paid their overtime at the enhanced rate they were promised by Bank of America.

82.     Additionally, other employees were not paid any overtime at all for their work on the PPP loan program, particularly those who were classified as exempt prior to being assigned to work on the program. Those classifications became erroneous when they began working on the PPP loan program, which consisted chiefly of loan processing and other non-exempt duties.

83.     Due to this practice, Plaintiffs and other similarly situated employees were paid less than required under the New York Labor Law for each overtime hour worked.

84.     Bank of America has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the New York Labor Law, and as a result thereof, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay pursuant to N.Y. Lab. Law § 198(1-a).

WHEREFORE, on Count II of this First Amended Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

        a.     Certify the state law claim set forth in Count II above as a class action pursuant to Fed. R. Civ. P. 23;

b.    Award Plaintiffs and the Class damages for the amount of unpaid wages due;

c.    Award Plaintiffs and the Class liquidated damages under N.Y. Lab. Law § 198(1-a);

d.    Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided under N.Y. Lab. Law § 198(1-a);

e.    Award Plaintiffs and the Class attorneys' fees and costs as allowed under N.Y. Lab. Law § 198(1-a); and

f.    Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

**COUNT III – New York Labor Law (Wage Payment Provisions)**
**Arising Out of Bank of America's Failure to Pay Promised PPP Incentives**

85.    Plaintiffs re-allege the allegations set forth above.

86.    The New York Labor Law provides that workers "shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." N.Y. Lab. Law § 191.

87.    Plaintiffs and other similarly situated employees earned wages pursuant to the agreed terms of employment that were not paid to them. Namely, this consisted of the PPP incentive payments and enhanced overtime promised to them as alleged herein.

88.    Bank of America failed to make these payments, thereby causing Plaintiffs and other similarly situated employees to be underpaid what they were owed.

89.    Bank of America has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the New York Labor Law, and as a result thereof, Plaintiffs and other similarly situated employees are entitled to recover an award

of liquidated damages in an amount equal to the amount of unpaid overtime pay pursuant to N.Y. Lab. Law § 198(1-a).

WHEREFORE, on Count III of this First Amended Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

      a.   Certify the state law claim set forth in Count III above as a class action pursuant to Fed. R. Civ. P. 23;

      b.   Award Plaintiffs and the Class damages for the amount of unpaid wages due;

      c.   Award Plaintiffs and the Class liquidated damages under N.Y. Lab. Law § 198(1-a);

      d.   Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided under N.Y. Lab. Law § 198(1-a);

      e.   Award Plaintiffs and the Class attorneys' fees and costs as allowed under N.Y. Lab. Law § 198(1-a); and

      f.   Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

## COUNT IV – Breach of Contract
### Arising Out of Bank of America's Failure to Pay Promised PPP Incentives

90.     Plaintiffs re-allege the allegations set forth above.

91.     Plaintiffs and other similarly situated employees entered into, and were parties to, a contract for employment with Bank of America. As part of the parties' bargained-for exchange, Bank of America promised to pay certain PPP incentive payments and enhanced overtime as alleged herein in exchange for work on the PPP loan program and for work during the COVID-19 pandemic.

92.     Bank of America breached these contractual agreements by failing to pay Plaintiffs and other similarly situated employees for the PPP incentives and enhanced overtime they earned in the course of their employment.

93.     Because of Bank of America's breach, Plaintiffs and other similarly situated employees have suffered damages, as they lost money promised and owed to them.

WHEREFORE, on Count IV of this First Amended Class Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

    a.  Certify the state law claim set forth in Count IV above as a class action pursuant to Fed. R. Civ. P. 23;

    b.  Award Plaintiffs and the Class damages for the amount of unpaid wages promised to them, along with all other damages provided by law;

    c.  Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided by law;

    d.  Award Plaintiffs and the Class attorneys' fees and costs; and

    e.  Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

**COUNT V – New York Wage Theft Prevention Act**
**Arising Out of Bank of America's Wage Statement Violations**

94.     Plaintiffs re-allege the allegations set forth above.

95.     New York's Wage Theft Prevention Act requires employers to furnish each employee with a statement with every payment of wages that includes, among other items, "the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." N.Y. Lab. Law § 195(3).

96.     Plaintiffs and other similarly situated employees were not furnished accurate wage statements with their paychecks because, *inter alia*, the listed "overtime rate of pay" was incorrect and deficient as a matter of law in that the miscellaneous nondiscretionary awards were included in employees' regular rates for calculating overtime only in arrears, such that they had no way of knowing or understanding the basis for their overtime earnings in a particular workweek. Additionally, the listed "regular hourly rate" improperly excluded the PPP incentive payments which Plaintiffs and other similarly situated employees earned and were entitled. Further, those wages were improperly excluded from Plaintiffs and other similarly situated employees' "overtime rates of pay."

97.     Additionally, many of Plaintiffs and other similarly situated employees' wage statements did not list "the number of regular hours worked, and the number of overtime hours worked."

98.     Because of these deficiencies, and because of the vexing, confusing, and incomplete manner in which their wage statements were formatted, Plaintiffs and other similarly situated employees were unable to realize that they were being underpaid but were instead led to believe that they were paid all wages to which they were entitled, thereby depriving them of the opportunity to take any corrective action.

99.     Bank of America did not make complete and timely payment of all wages due under New York law to Plaintiffs and other similarly situated employees, as it failed to properly pay said employees all promised wages and for overtime work performed as alleged herein. As a result, it is not entitled to an affirmative defense pursuant to N.Y. Lab. Law § 198 (1-d).

100.    Because Plaintiffs and other similarly situated employees were not provided compliant and accurate wage statements attendant to having not been paid all wages due under the New York Labor Law by Bank of America, they are entitled to recover statutory penalties.

WHEREFORE, on Count V of this First Amended Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

a.    Certify the state law claim set forth in Count V above as a class action pursuant to Fed. R. Civ. P. 23;

b.    Award Plaintiffs and the Class statutory damages and penalties as provided under N.Y. Lab. Law § 198(1-d);

c.    Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided under N.Y. Lab. Law § 198(1-a);

d.    Award Plaintiffs and the Class attorneys' fees and costs as allowed under N.Y. Lab. Law § 198(1-d); and

e.    Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

### COUNT VI – New York Wage Theft Prevention Act
### Arising Out of Bank of America's Wage Notice Violations

101.    Plaintiffs re-allege the allegations set forth above.

102.    New York's Wage Theft Prevention Act requires employers provide each of their employees written notice of several wage-related items, including the employee's "regular hourly rate and overtime rate of pay." N.Y. Lab. Law § 195(1-a).

103.    This notice must be provided "at the time of hiring", as well as seven days prior to any changes to the terms taking effect, "unless such changes are reflected on the wage statement

furnished in accordance with subdivision three of [the law]", and the employer must retain the signed notice form for six years. *Id.*; *see also* N.Y. Lab. Law § 195(2).

104.    Bank of America did not provide a notice to Plaintiffs and other similarly situated employees seven days prior to the changes to their "regular hourly rate and overtime rate of pay" when the PPP loan program went into effect, and they became eligible to earn miscellaneous nondiscretionary awards to supplement their hourly earnings. Nor did it provide notice when their "regular hourly rate and overtime rate of pay" continued to change throughout the duration of the PPP loan program due to, inter alia, fluctuations in the amounts of the miscellaneous nondiscretionary awards earned by them.

105.    For the reasons alleged in Count V, these changes were also not reflected in wage statements provided to Plaintiffs and similarly situated employees.

106.    Because of these deficiencies, Plaintiffs and other similarly situated employees were unable to realize that they were being underpaid but were instead led to believe that they were paid all wages to which they were entitled, thereby depriving them of the opportunity to take any corrective action.

107.    Bank of America did not make complete and timely payment of all wages due under New York law to Plaintiffs and other similarly situated employees, as it failed to properly pay said employees all promised wages and for overtime work performed as alleged herein. As a result, it is not entitled to an affirmative defense pursuant to N.Y. Lab. Law § 198 (1-b).

108.    Because Plaintiffs and other similarly situated employees were not provided accurate and timely written wage notices attendant to having not been paid all wages due under the New York Labor Law by Bank of America, they are entitled to recover statutory penalties.

WHEREFORE, on Count VI of this First Amended Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

  f.  Certify the state law claim set forth in Count VI above as a class action pursuant to Fed. R. Civ. P. 23;

  g.  Award Plaintiffs and the Class statutory damages and penalties as provided under N.Y. Lab. Law § 198(1-b);

  h.  Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided under N.Y. Lab. Law § 198(1-a);

  i.  Award Plaintiffs and the Class attorneys' fees and costs as allowed under N.Y. Lab. Law § 198(1-b); and

  j.  Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury of all issues so triable.

Dated:  August 8, 2024

Respectfully submitted,

**GETMAN, SWEENEY & DUNN PLLC**

*/s/ Matt Dunn*
Matt Dunn
260 Fair Street
Kingston, NY 12401
Telephone:      (845) 255-9370
Facsimile:      (845) 255-8649
mdunn@getmansweeney.com

**STUEVE SIEGEL HANSON LLP**
George A. Hanson, *pro hac vice forthcoming*
Alexander T. Ricke, *pro hac vice forthcoming*
Caleb J. Wagner, *pro hac vice forthcoming*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:      (816) 714-7100
Facsimile:      (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com
wagner@stuevesiegel.com

**ATTORNEYS FOR PLAINTIFFS**